**Mary Culp, by Harvey Culp, Jr., Her Father and Next Friend, Plaintiff-Appellant, v. Howard D. Olive, Defendant-Appellee.**

**Gen. No. 10,422.**

Fourth District.

January 22, 1964.

Robert G. Heckenkamp, of Springfield, for appellant.

Giffin, Winning, Lindner & Newkirk, of Springfield (Alfred F. Newkirk, of counsel), for appellee.

ROETH, JUSTICE.

This suit was brought by Mary Culp, a minor, by her father and next friend, for damages arising out of injuries sustained by her in an automobile collision. She was a passenger in an automobile that collided with an automobile being driven by defendant. It should be noted that originally the suit was instituted against this defendant and the administrator of the estate of the driver of the car in which plaintiff was riding and contained a count of wilful and wanton misconduct against this defendant as well as the usual charges of negligence. The cause of action against the estate of the deceased driver was settled just prior to the trial of this cause and the case ultimately submitted to the jury against this defendant on the negligence count only, plaintiff dismissing the wilful count at the conclusion of all testimony. The complaint as to this defendant is in the usual form of a negligence complaint. The charges of negligence submitted to the jury were (a) speed greater than reasonable (b)

driving while under the influence of liquor (c) failure to apply brakes and decrease speed and (d) failure to keep automobile under control, all of which allegations were denied by defendant. In addition to the denials of defendant to most of the allegations of plaintiff's complaint, defendant's answer contained the following:

> "Denies that as a direct and proximate result of any negligence or carelessness on his part, the plaintiff sustained any injuries or damages."

The jury found for defendant and judgment was entered on the verdict and this appeal followed. The only errors assigned on this appeal are the refusal of the trial court to give one instruction tendered by counsel for plaintiff and the giving of four instructions tendered by counsel for defendant. To adequately consider these claimed errors we must examine the facts.

Plaintiff sustained head injuries and was unable to testify as to the events at the time of the collision, having lost all memory of the same. Proof of what actually happened at the time of and immediately before the collision is confined to the testimony of the only two eyewitnesses, defendant and the passenger in his automobile. Plaintiff, who was 15 years old at the time of the occurrence, her older sister and other girl friends, attended a late hour picnic with the defendant and several young men, held on the banks of the Sangamon River near Rochester, Illinois. The attendance of the girls, some 8 or 10 or 12 of them, at the picnic was impromptu, the same having been arranged as a stag by John Raps, one of the young men present and who lost his life in the subsequent collision. The young men had a camp fire burning at the picnic spot and had purchased some beer to drink. Upon arrival the girls participated in the drinking of beer and plaintiff testified she consumed 3 or 4 bottles. There

is a dispute as to whether defendant was drinking beer, he testifying that he did not and some of those present testifying that he did. The girls arrived at about 11:00 o'clock and at 11:30 plaintiff's sister left the affair to take a girl friend home, advising she would be back to get plaintiff. Defendant arrived at the picnic spot at about 11:15 p. m. and at midnight left the picnic alone, to go to Rochester to get some gas. The picnic subsequently broke up and plaintiff, a young man named Braner and John Raps, the driver of the car in which plaintiff was riding at the time she was injured, were alone at the site. The three got into Raps' car with plaintiff driving and headed up a gravel or dirt road to the Buckhart Road, the road upon which the collision took place, the same being a paved two-lane highway. Before reaching the Buckhart Road they met defendant, who had been to the party and had driven into Rochester to get gasoline for his automobile. The two cars stopped, and after a brief exchange, plaintiff proceeded ahead and defendant turned his car around and followed. Shortly thereafter the two cars stopped, Braner got into defendant's car and Raps took the wheel of his automobile with plaintiff seated on his right. The two cars then proceeded toward Rochester with defendant and Raps driving their respective automobiles. They were headed in a Westerly direction toward Rochester with defendant in the lead. His speed according to his testimony was 60 to 65 miles an hour as he entered a slight curve about $\frac{1}{4}$ mile east of Rochester and Raps was about $\frac{1}{10}$ of a mile behind. About two blocks east of Rochester defendant testified he took his foot off the accelerator. This was at a point in the road where a "Speed Zone Ahead" sign was located. At this point Raps attempted to pass him. Defendant testified he was able to see the Raps' automobile through his rear view mirror and that he saw that

399

the Raps' car was too far to the left; that it left the pavement on the south side of the road onto the shoulder and into a shallow ditch; that it continued driving along the road with the car half off and half on the paved portion; that he could see and did watch Raps' car as it came upon him. He stated he could see "with my mirror that he was too far over and I could see he was off the road"; that Raps started this maneuver at about ⅒ of a mile behind defendant's car; that he could follow Raps' path down through the ditch through "my mirror." From the testimony it appears that the defendant watched Raps' car in the rear view mirror, lost sight of him as he went out of the range of view of that mirror and then saw him again as he was abreast of defendant's car; that the car was traveling at a high rate of speed still half on and half off the pavement and angling to the north. At the point where Raps' car was abreast of defendant's car sliding in an angling position toward the north, apparently out of control, defendant testified he was traveling about 30 to 40 miles per hour and was pressing his brakes hard but not hard enough to skid the car. Braner, defendant's passenger, testified he could not see the Raps' car except for the reflection of the headlights on defendant's windshield until it pulled alongside and at that time was off the pavement. Both defendant and his passenger state that Raps' car skidded across in front of defendant's car onto the right side of the road where the collision occurred. They both testified defendant was driving in his own lane and that the impact took place between defendant's right fender and the right door of the Raps' car; that the Raps' car spun around, went backwards into a tree, flipped over on its side at the Village Limits sign which read "Rochester" "Speed Limit 30 M.P.H." All of the testimony set forth above, from the time the cars were traveling on the Buckhart Road up to

the collision, was that of the defendant, except Braner's testimony where noted. A state trooper investigated the collision shortly after it occurred. The cars had not been moved when he arrived. He was able to trace the path of the Raps' car and found tire marks in the ditch or shallow gully on the south side of the road completely off the pavement for a distance of $\frac{1}{10}$ of a mile to the point of impact on the north side of the road, from which point there were semi-circular skid marks to the place where the Raps' car turned over, a distance of approximately 40 yards. He was also able to observe that the defendant's car had proceeded straight down the road from the point of impact on the north side thereof, and came to rest as it swung to the north and struck a culvert, a total distance of 101 yards. Another witness testified that mail boxes, signs and 100 to 150 feet of fence to the north of the highway were torn out and that a tree 8 to 10 inches thick was broken off at the ground when struck by the Raps' car. After the collision Raps was dead, the plaintiff was unconscious but defendant and his passenger were conscious, walking around and talking to persons who arrived at the scene.

The instructions complained of are as follows:

"Defendant's Instruction No. 4.

"It was the duty of the plaintiff, before and at the time of the occurrence, to use ordinary care for her own safety and the safety of her property."

"Defendant's Instruction No. 18.

"If you find from the evidence that the plaintiff's injuries were proximately caused by the wilful and wanton misconduct of John T. Raps, if any, and without any fault upon the part of the defendant Howard D. Olive, then and under those circumstances you should find the defendant Howard D. Olive not guilty."

401

"Defendant's Instruction No. 20.

"If you find from the evidence that in the operation of his motor vehicle the defendant Howard D. Olive was exercising ordinary care and that he was confronted by a sudden emergency occasioned by the sudden appearance of the other automobile directly in front of him, and in his lane of traffic, then the defendant Howard D. Olive is not required to thereafter exercise the same degree of care and judgment as might be expected of him under other circumstances, but he is required to exercise only that degree of care and caution which a reasonably prudent person would exercise under the like or similar circumstances."

"Defendant's Instruction No. 21.

"Evidence that a witness, on some prior occasion, has made a statement which is inconsistent with his or her testimony at the trial of the cause may be considered by the jury in determining the credibility of such witness, and the weight to be given to his or her testimony, but may not be considered by the jury as in any way tending to prove how the accident occurred, nor as tending to prove the guilt or innocence of the defendant of the acts or omissions charged against him."

Plaintiff also complains that the court erred in failing to give plaintiff's instruction No. 8 which is as follows:

"Contributory negligence of the parents is not an issue in this case."

 As to defendant's instruction No. 4, it is in the approved form as set out in IPI No. 10.03. The only objection raised to this instruction is that it fails to limit the duty of the plaintiff to use ordinary care to

a time "immediately" before and at the time of the occurrence. We feel quite certain that the drafters of IPI were fully cognizant of the long line of decisions holding that the question of due care should not be confined within too narrow a compass but should include the time leading up to the occurrence and should cover the entire occurrence. We find no error in the giving of this instruction.

■ As to defendant's instruction No. 18 it is claimed that the instruction is not in I.P.I., that it is confusing and peremptory in form. In appraising plaintiff's objections to this instruction attention should be directed to plaintiff's given instruction No. 7 which is:

"Plaintiff's Instruction No. 7, I.P.I., No. 12.04.

"More than one person may be to blame for causing injury. If you believe that the defendant was negligent and that his negligence caused injuries to the plaintiff, it is not a defense that some third person may also have been to blame."

It is axiomatic that instructions must be considered as a series. When this is done, defendant's instruction No. 18 and plaintiff's instruction No. 7 are for all intents and purposes a single instruction substantially in the form set out in I.P.I. 12.05. It is true that plaintiff's instruction No. 7 is I.P.I. No. 12.04. This is substantially the meaning of the first sentence of I.P.I. No. 12.05. Defendant's instruction No. 18 is substantially the last sentence of I.P.I. 12.05. While these two instructions might well have been combined we are of the opinion that the giving of plaintiff's instruction No. 7 warranted the giving of defendant's instruction No. 18. Independent of the foregoing see also Rzeszewski v. Barth, 324 Ill App 345, 58 NE2d 269.

■ Plaintiff's counsel also assigns as error the giving of defendant's instruction No. 20. At the con-

ference on instructions plaintiff objected to this instruction on the ground (1) I.P.I. condemns the giving of such instruction and (2) under 351 Ill App 476 it was held that defendant was not entitled to such an instruction. The comment on a sudden emergency or peril instruction will be found on page 80 of I.P.I. under No. 12.02. The recommendation of the committee preparing I.P.I. is that this type of instruction should not be given. Two of the cases cited in support of this position are pedestrian cases and the other case involves the appearance of a fire truck at an intersection which the court held was not a sudden emergency since the motorist must be held to anticipate such a situation in the exercise of ordinary care. It is interesting to note in one of the cases cited in I.P.I., Reese v. Buhle, 16 Ill App2d 13, 147 NE2d 431, the court limited its holding as follows:

> "This instruction has been held erroneous when applied to a motorist confronted by a pedestrian. (citing cases). It is inconsistent with the principle which we have here again enunciated that a motorist approaching a crosswalk must be on the alert for pedestrians."

The courts of review have vacillated between approval and criticism of this type of instruction. For the most recent analysis of this type of instruction see the case of Osborne v. Redell, 22 Ill App2d 193, 159 NE2d 841, written by Justice Crow of Sangamon County for the Second District of the Appellate Court and concurred in by Justice Wright and Justice Solfisburg. In the conference on instructions plaintiff's counsel cited Krohn v. O'Bara, 351 Ill App 476, 115 NE2d 569, as authority for his objection to defendant's instruction No. 20. This case is also a pedestrian at a crosswalk case. The sudden emergency or peril instruction tendered by defendant and refused by the

court was very involved and consisted of one sentence of 202 words. The court observed:

> "Defendant cites no cases upon which it is based. We have said that a jury should be instructed in brief, clear and simple language. This certainly does not meet these standards."

In the final analysis the question presented to this court is comparatively simple. Was the giving of defendant's instruction No. 20 *reversible* error. Upon a careful review of the original record we are convinced that the occurrence in question may properly be described as a "split second collision." The two eyewitnesses have so described it. Thus a factual situation is presented from which it can be justifiably argued that the conduct of Raps in operating his car gave rise to a sudden emergency so far as defendant was concerned. Furthermore the answer of defendant should have alerted plaintiff that this was the primary defense of defendant. We are fully aware of the thinking of the committee which prepared I.P.I. The principle giving rise to their recommendation that such an instruction not be given is, "it states a simple and obvious fact about human behavior" . . . "when no juror would need to be reminded of the proposition." If this reasoning is adopted, and if this matter is the proper subject of comment on final argument as suggested by the committee, then we fail to see how plaintiff was prejudiced by the giving of the instruction. We do not disagree with the recommendation of the committee but are of the opinion that under the factual situation here presented the error was harmless. Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced. Kavanaugh v. Washburn, 320 Ill App 250, 50 NE2d 761; Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205.

■ As to defendant's instruction No. 21, the only objections made to this instruction by counsel for plaintiff, at the conference on instructions, was that it was not in I.P.I. and was not a proper instruction. This form of objection is not within the rule announced by the reviewing courts, that objections should specifically point out wherein the instruction is an incorrect statement of the law or not applicable. Furthermore when the trial judge indicated he would give the instruction counsel for plaintiff requested the opportunity to tender an admission instruction, which he did. The court gave this instruction.

■ We are of the opinion that the court's ruling on plaintiff's instruction No. 8 was correct. No issue was made by the pleadings on the matter of contributory negligence of the parents and there is no evidence in the record which would justify the giving of this instruction.

We find that the instructions in the case at bar, taken as a whole, adequately present the issues and the applicable law. We find no reversible error therein.

Accordingly the judgment of the Circuit Court of Sangamon County will be affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.