GEORGE DEVERMAN, Plaintiff-Appellee, *v.* THE COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 14364

Opinion filed December 30, 1977.—Rehearing denied February 8, 1978.

Peter K. Woody, of Gillespie, Cadigan & Gillespie, of Springfield, for appellant.

Homer J. Tice, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This case arose out of a controversy between the plaintiff-insured and the defendant-insurer over the value of plaintiff's automobile which was totally destroyed on January 21, 1975. The car was insured by defendant and liability was admitted under collision coverage in the policy for the

actual cash value less $50 deductible. A trial was held on the question of damages only and plaintiff was awarded $2,600 less $50 for the deductible; plaintiff was also awarded $547 storage charges and $150 attorney fees and $214.99 interest, the latter two items representing vexatious delay on the part of defendant. This appeal followed.

Three issues are raised: (1) Whether the $2,600 value was against the manifest weight of the evidence; (2) whether defendant was guilty of vexatious delay; and (3) whether storage charges were properly allowed against defendant.

To a large extent these issues overlap and blend into each other. Plaintiff maintains that upon the entire evidentiary record the holding of the trial court was correct. Defendant, on the other hand, claims that an honest dispute was in progress over a period of considerable time and therefore it cannot be charged with vexatious delay; that the evidence does not support the trial court's award of either the cash value or the storage charges.

In summary form the evidence disclosed that the plaintiff was the owner of a 1972 Chevrolet Impala automobile which was totally destroyed. The car was in excellent condition and had approximately 60,000 miles on it; it also had several "extras," such as air conditioning, a vinyl top, a tilt steering wheel, rear speakers, door-edge guards and bumper guards.

Shortly after the accident defendant's agent offered plaintiff $2,250 for the loss and stated, "That's all you are ever gonna [sic] get * * *." Plaintiff then went to various dealers to investigate the prices of similar cars. None could be said to be identical in terms of mileage and extras but they were substantially similar and all ranged in the neighborhood of $2,600. In February 1975, defendant raised its offer to $2,362.50, reflecting sales tax on its original offer of $2,250.

Apparently nothing further happened until the fall of 1975, when defendant made yet another offer of $2,400 which plaintiff refused and defendant then withdrew that offer. At or near this time, plaintiff investigated through the Illinois Department of Insurance and discovered that, according to the standards in force there, defendant should have paid $2,450, representing NADA guidelines[1], less $200 high mileage deduction. Plaintiff then offered to settle for $2,450 plus sales tax. Apparently this offer was refused by defendant. Plaintiff then filed suit.

At trial plaintiff produced the dealer who had serviced his car. The dealer testified that, according to NADA, the car was worth $2,450, but that it was an above-average car and he placed a value of $2,600 on it. Defendant produced an employee of the Department of Insurance who

---

[1] NADA is a publication setting forth the average value of used cars in the area as determined by their prices.

testified about the Department's Rule 9.19. That rule requires that when a cash settlement is made, the insurer must start with retail value and then document any deviation. NADA is the recommended source.

Defendant also produced one of its claims supervisors. He testified that after making a high-mileage deduction, his assessment of value, taking NADA into account, was $2,375, including taxes. He later raised this figure to $2,400 on account of some extras which had been missed. He had never viewed the car, but felt that $2,400 was an overpayment.

■■ The trial court had before it the various appraisals, heard the witnesses and was in a superior position to assess the evidence. We cannot say that there is any basis upon which to disturb his finding as to value. It is not against the manifest weight of that evidence.

■■ A more serious problem is presented with the question of vexatious delay. The statutes allowing attorney's fees (Ill. Rev. Stat. 1975, ch. 73, par. 767) and interest (Ill. Rev. Stat. 1975, ch. 74, par. 2) are not applicable simply because the insurer was unsuccessful in litigation. (See, for example, *Olivero v. Horace Mann Mutual Insurance Co.* (1964), 46 Ill. App. 2d 97, 196 N.E.2d 366). Nor is a refusal to settle vexatious *per se.* (*Knight v. Kenilworth Insurance Co.* (1971), 2 Ill. App. 3d 493, 275 N.E.2d 470.) The parties have cited to us cases involving varying lengths of time and the courts arriving at varying conclusions. *E.g., Brown v. State Farm Fire & Casualty Corp.* (1975), 33 Ill. App. 3d 889, 338 N.E.2d 427, 14 months held vexatious; *Kespohl v. Northern Trust Co.* (1970), 131 Ill. App. 2d 188, 266 N.E.2d 371, 5 years held not vexatious.

We are not persuaded that time alone, or any other single factor taken by itself, is controlling. Rather the totality of the circumstances, taken in broad focus, will determine the matter and the trial court's discretion will not be disturbed unless it can be shown to have been abused. Compare *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280, 157 N.E.2d 679.

Superficially, it would appear that the parties were quarrelling over $350, but the amount involved is of no more significance than the time involved; it is the attitude of the defendant which we are called upon to examine and we find this attitude to be not only vexatious, but irritating, exasperating and provoking.

In the very beginning defendant started things off with an offer well below retail value coupled with a statement that said in effect, "Take it or leave it—there will be nothing more." After plaintiff had produced several appraisals showing a value around $2,600, defendant then decided to sweeten the offer just a little, the amount of the sales tax. Ten months later there comes another small raise, still short of what market value had been shown to be. Meanwhile, a claims supervisor of defendant is working on the matter in the abstract and admittedly overlooked items of value on the car. Early on, defendant threatened economic reprisal against the

plaintiff (see the discussion of storage charges). Finally the plaintiff was compelled to file suit to bring the matter to a head.

Apropos of economics, we note in passing that plaintiff was deprived of the use of his automobile during all this period. The car had been "totalled." This is not a case wherein repairs have been made and the parties are nattering over their cost.

■■ We find that the trial court was amply justified in finding the defendant guilty of vexatious delay within the meaning of the statutes. Therefore, his award of attorney's fees and interest will not be disturbed.

■■ As to the matter of storage charges, after the collision, the wreck was stored at a service station for a fee of $1 per day. Under the terms of the policy defendant was obligated to pay "general average and salvage charges for which the insured becomes legally liable due to the transportation of the vehicle." In fact, defendant did pay the storage from January 21, 1975, to May 1, 1975, even though in connection with its second offer in February it notified plaintiff that under the terms of the policy it was electing to take the vehicle and pay cash. The latter was an obvious impossibility since title was still in plaintiff and no settlement had been reached. The ploy, apparently, was to attempt a low settlement and if it did not work, then to threaten plaintiff with storage charges after the deadline set by defendant.

Defendant argues that plaintiff was under a duty to mitigate his consequential damages. Such an argument overlooks the requirement that defendant also be responsible for the storage and it has a similar duty to mitigate. The storage charges could have been held to a minimum but for the vexatious delay incurred by defendant.

We find no error in the judgment of the trial court and it is affirmed.

Affirmed.

GREEN, P. J., and CRAVEN, J., concur.