ROBERT L. KELLER, Plaintiff-Appellee and Cross-Appellant, v. STATE FARM INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—87—0489

Opinion filed March 17, 1989.

542

Thomas H. Boswell, of Mitchell, Brandon & Schmidt, of Carbondale, for appellant.

Thomas F. Crosby, of Winters, Brewster, Murphy, Crosby & Patchett, of Marion, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Defendant, State Farm Insurance Company, appeals following a jury trial in the circuit court of Williamson County which resulted in a verdict and judgment in favor of plaintiff, Robert L. Keller. The suit was originally brought by plaintiff for damages resulting from defendant's breach of a contract of adjustment of an insurance claim, and for penalties under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767) for defendant's vexatious and unreasonable delay in the settlement of the insurance claim.

Plaintiff's home in Marion, Illinois, was totally destroyed by tornado in May 1982. The home was insured by defendant insurance company for its replacement value. Under the terms of the policy, the insured is first paid the actual cash value of the home at the time of the loss, and if the home is thereafter repaired or replaced, the insured is paid the additional cost to repair or replace it, up to the designated policy limit.

After the tornado, State Farm claims adjuster Donald Long came to Marion as part of a special claims team to adjust insurance claims stemming from the tornado. He was assigned to adjust plaintiff's claim. Long and plaintiff met only two times, the first time at the site of plaintiff's destroyed home only a few days after the tornado. On June 7, 1982, plaintiff went to the Marion Holiday Inn, where Long had set up a temporary office. Plaintiff did not have an appointment, and Long had just gotten out of the shower and was not expecting plaintiff.

Plaintiff told Long that he wanted to settle his claim. Long calculated the actual cash value of plaintiff's home at the time of the loss to be $50,939.43, and, after subtracting the $100 deductible provided for under the policy, issued plaintiff a check in the amount of $50,839.43. Long then produced a document entitled "Property Claim Agreement" and explained to plaintiff that he would be entitled to an additional sum of money in the event he repaired or replaced his home. The property claim agreement recited that upon repair or replacement of his house, plaintiff would be entitled to receive the lesser of either the amount actually expended, or the sum of $11,458.94. At that time, plaintiff did not know the limit of his insurance policy and relied entirely on Long's computations. Long did have information in his file as to the limit of plaintiff's insurance. Long testified that an insured would be unable to calculate the limit of his insurance even if he had a copy of his policy, as the amount is adjusted periodically for inflation.

Thereafter, plaintiff elected to replace his home and entered into a contract to purchase a home from his son for the sum of $70,000. On July 1, 1982, plaintiff went to the local State Farm office and told his agent, Dean Colp, that he wanted the rest of the money due him under the property claim agreement. Colp told plaintiff that he would have to present a written contract to purchase the home. On July 7, 1982, plaintiff presented Colp with a contract to purchase the home and with the property claim agreement. Colp took both documents to the local claims office, where he was told that Long had made a mistake in his calculations. The sum set forth in the property claim

agreement exceeded plaintiff's policy limit. Under the terms of the insurance policy, the maximum amount plaintiff could receive was $56,139.93. Under the property claim agreement, plaintiff was to receive a total of $62,298.37. Defendant refused to pay plaintiff the amount due under the property claim agreement and, instead, paid plaintiff only the maximum amount allowed under the policy. Defendant issued plaintiff a check in the amount of $5,300.50 on July 8, 1982. Plaintiff negotiated the check the next day.

On January 10, 1984, plaintiff filed a complaint in the circuit court of Williamson County. Defendant's motion to make the complaint more definite and certain was granted, and an amended complaint was filed on June 3, 1985. Defendant filed a motion to dismiss the amended complaint, which was granted in part. On April 7, 1986, plaintiff filed a second amended complaint in three counts. Count I alleged a breach of contract of adjustment. Count II, pled in the alternative to count I, alleged a breach of an implied-in-fact contract. Count III sought penalties for defendant's vexatious and unreasonable delay in settling plaintiff's claim. Defendant filed an answer to count III of the complaint, but filed a motion to dismiss counts I and II. The motion to dismiss argued that count I of the complaint, which sought to state a cause of action for breach of an express contract of adjustment, failed to allege any facts indicating consideration for the alleged contract. This motion was denied, and defendant subsequently filed an answer to the second amended complaint. In its answer, defendant raised several affirmative defenses, including that plaintiff had never given any consideration for defendant's promise to pay an amount in excess of the policy limit and that defendant's promise to pay an amount in excess of the policy limit was the result of a mutual mistake of fact.

On January 12, 1987, plaintiff filed a third amended complaint which was substantially identical to counts I and III of the second amended complaint. Count II of the second amended complaint was omitted from the third amended complaint. Defendant filed its answer on January 13, 1987.

Trial commenced on January 12, 1987. At the close of plaintiff's case, defendant moved for a directed verdict based on the lack of any evidence of consideration for defendant's promise to pay an amount greater than the policy limit. The motion was denied. At the close of all the evidence, plaintiff moved to strike the defendant's first affirmative defense regarding the lack of consideration. The court granted the motion, finding that consideration is an element of plaintiff's case, on which plaintiff has the burden of proof, and therefore it is not a

proper affirmative defense. At the close of all the evidence, defendant again asked for a directed verdict on the basis that plaintiff had not established that he had given consideration for defendant's promise to pay an amount greater than the policy limit. Defendant argued that, because plaintiff had received payment of the policy limit, he had no right to sue for a greater sum and therefore forbearance from suit could not serve as consideration. The court denied the motion. Defendant also moved for a directed verdict on the basis that the contract of adjustment was the result of a mutual mistake. This motion was also denied.

On January 13, 1987, the jury returned a verdict in favor of plaintiff and against defendant, and assessed plaintiff's damages at $7,544.67.

A hearing on count II of the third amended complaint was held February 5, 1987. After hearing evidence and argument, the trial court found that defendant's delay in paying plaintiff's claim had been vexatious and unreasonable, and ordered defendant to pay plaintiff attorney fees in the amount of $2,514.89, costs in the amount of $449 and a penalty in the amount of $1,886.17 pursuant to section 155 (Ill. Rev. Stat. 1987, ch. 73, par. 767).

Defendant raises numerous issues on appeal. The first three issues relate to the subject of consideration for defendant's promise to pay more than the policy limit, an issue which was hotly disputed in the trial court. Defendant argues that: (1) the trial court erred in failing to dismiss plaintiff's third amended complaint for failure to state a cause of action for breach of contract because plaintiff did not plead the element of consideration in support of the alleged contract; (2) the trial court erred in denying defendant's motions for directed verdict in that plaintiff failed to establish that any consideration had been given in support of the alleged contract; and (3) the jury's verdict was against the manifest weight of the evidence in that plaintiff failed to establish the essential element of consideration in support of the alleged contract.

■ With respect to the deficiency of the complaint, defendant correctly argues that, in order to state a cause of action for breach of contract, the plaintiff must plead the existence of a contract. In order to do this, a plaintiff must allege facts sufficient to indicate the essential elements of a contract, *i.e.*, offer, acceptance and consideration. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864, 341 N.E.2d 101, 104-05.) Defendant argues that plaintiff's complaint contains no allegation of fact to indicate that any consideration was given for the alleged contract of adjustment. Defendant's argument seems

to be that, because the policy limit was paid, plaintiff could not have sued defendant for a greater amount, and therefore, forbearance from suit could not have served as the consideration for the adjustment contract.

■ Pleadings are to be liberally construed with a view to doing substantial justice between the parties. (*In re Estate of Schwebel* (1985), 133 Ill. App. 3d 777, 785, 479 N.E.2d 500, 506.) Thus, no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. (*Schwebel*, 133 Ill. App. 3d at 785, 479 N.E.2d at 506.) Plaintiff's complaint alleges that during the adjusting of plaintiff's property damage claim, defendant promised to pay plaintiff $11,458.94, and that plaintiff and defendant entered into a property claim agreement which effected settlement of plaintiff's property insurance claim. We think these allegations are sufficient to inform defendant that the consideration being pled is plaintiff's compromise of his disputed property insurance claim and his forbearance from suit thereon.

■ The compromise of a disputed claim will serve as consideration (*LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 735, 442 N.E.2d 1367, 1372), as will a promise to forego legal action. (*Redarowicz v. Ohlendorf* (1981), 95 Ill. App. 3d 444, 448, 420 N.E.2d 209, 212, *modified* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) Even if the claim is not valid, its compromise will support a settlement agreement as long as the claim is asserted in good faith. (*LeMaster*, 110 Ill. App. 3d at 735, 442 N.E.2d at 1372.) Defendant does not contend that plaintiff did not act in good faith in accepting the property claim agreement in full settlement of his claim. Instead, defendant admits that plaintiff could not have known that the offered amount was in excess of plaintiff's policy limit. We think that plaintiff's complaint was sufficient to inform defendant of the facts upon which plaintiff relied to indicate consideration for the property claim agreement.

■ Whether to grant or deny a motion to dismiss a complaint is within the sound discretion of the trial court. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 422, 430 N.E.2d 976, 983.) The trial court's denial of defendant's motion to dismiss was not an abuse of discretion.

Defendant also argues that the trial court erred in denying its motions for directed verdict at the close of plaintiff's case and at the close of all the evidence. Defendant argues that plaintiff failed to present sufficient evidence at trial to establish that consideration had

been given in support of the contract of adjustment. Specifically, defendant argues that plaintiff did not offer evidence that he had paid premiums to defendant for the sum of money offered in the property claim agreement, or that plaintiff forbore from bringing suit for a greater amount than was offered. Defendant argues that since the amount in the property claim agreement exceeds the policy limit, plaintiff could not have sued for a greater amount. For the same reason, defendant argues that the jury's verdict in favor of plaintiff is against the manifest weight of the evidence.

■■ It is well settled that verdicts ought to be directed only in those cases in which all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513.) In evaluating the evidence, all reasonable inferences must be made in favor of the party opposing the motion for directed verdict. (*Thorne v. Elmore* (1979), 79 Ill. App. 3d 333, 340, 398 N.E.2d 837, 844.) This same test is to be applied in reviewing the trial court's decision on a motion for a directed verdict. (*Thorne*, 79 Ill. App. 3d at 340, 398 N.E.2d at 844.) Furthermore, the jury's verdict can be reversed as against the manifest weight of the evidence only if all the evidence, viewed in the light most favorable to appellee, so overwhelmingly favors appellant that no contrary verdict could ever stand, or if the verdict is palpably erroneous and wholly unwarranted, clearly the result of passion or prejudice, or arbitrary, unreasonable and not based upon the evidence. (*Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1085, 508 N.E.2d 1252, 1254.) In this case, the evidence does not so overwhelmingly favor defendant/appellant, nor is the verdict palpably erroneous or unreasonable.

■ Plaintiff testified at trial that he understood his insurance policy to be a full replacement policy and that if defendant had offered him a sum of money less than the estimated cost of replacing his home, he would not have accepted it. He testified that he settled his claim with defendant when he met Long at the Holiday Inn, received a check in the approximate amount of $50,000, and was told that he would receive an additional sum of approximately $11,000 upon building or buying a new house. Plaintiff testified that he agreed to these terms in settlement of his claim for property damage, and that he understood that by accepting the offer, he was agreeing not to seek any additional money from defendant for his property damage. Common sense dictates that defendant would not have agreed to settle plain-

tiff's claim without such an understanding.

We think this evidence and the reasonable inferences therefrom, when viewed in the light most favorable to plaintiff, are sufficient to establish that plaintiff entered into a compromise settlement of a disputed claim and agreed to forebear from suit against defendant in return for defendant's promise to pay the sum of $11,459.94 upon plaintiff's purchase of a new home. As pointed out above, this is sufficient consideration for defendant's promise in spite of the fact that plaintiff's claim for more than his policy limit might not have been valid. The trial court properly denied defendant's motions for directed verdict, and the jury's verdict is not against the manifest weight of the evidence.

Defendant also argues that the trial court's denial of its affirmative defense of mutual mistake was against the manifest weight of the evidence. Plaintiff counters that any mistake in the contract of adjustment was a unilateral mistake on the part of defendant, and that, in any event, rescission of the contract should not be granted where the mistake was due to defendant's own failure to exercise ordinary care and plaintiff could not be placed *in statu quo*. We need not determine whether the mistake here was mutual or unilateral as the requirements for rescission of the contract are the same in either case.

In order to rescind a contract on the basis of either a unilateral or mutual mistake of fact, the party seeking rescission must show by clear and positive evidence that a mistake has been made in a material feature of the contract, that the mistake is of such grave consequence that to enforce the contract would be unconscionable, that the mistake occurred notwithstanding the exercise of due care on the part of the party seeking rescission, and that the other party can be placed *in statu quo*. *Wil-Fred's Inc. v. Metropolitan Sanitary District of Greater Chicago* (1978), 57 Ill. App. 3d 16, 21, 372 N.E.2d 946, 951.

There is no dispute in the instant case that there was a mistake made in the contract of adjustment and that it relates to a material feature of the contract. Plaintiff presented no evidence as to whether enforcement of the contract would be unconscionable. The argument of the parties, and apparently the decision of the trial court, relates to whether defendant exercised due care in execution of the contract.

Defendant's agent, Long, testified at trial that plaintiff presented himself at Long's motel room without an appointment and stated that he wanted to settle his claim. Long had just gotten out of the shower and was unprepared for plaintiff's visit. Long was forced to make his calculations and prepare the property claim agreement while plaintiff waited. Long erred in preparing the contract in that he

transposed from his calculations a figure representing the depreciation amount onto the property claim agreement as the replacement amount. Long did have the correct figure in front of him, but erred in filling out the property claim agreement. There is no evidence that plaintiff was rushing Long or that there was any other reason for Long to rush or that he did rush in preparing the contract.

Defendant argues that Long's error does not amount to a failure to exercise ordinary care. Both the trial court and the jury disagreed. The trial court submitted advisory interrogatories to the jury inquiring whether they believed the mistake in the contract was a result of defendant's failure to exercise ordinary care. The jury found that it was. Thereafter, the trial court denied defendant's affirmative defense of mistake. The applicable standard of care is whether a person of reasonable prudence would have acted in the same manner under the same circumstances. (*McCracken Contracting Co. v. R.L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 687, 462 N.E.2d 682, 687.) The question of due care is a factual question to be determined by the trial court, and such determination will not be disturbed unless it is against the manifest weight of the evidence. (*Wil-Fred's Inc.*, 57 Ill. App. 3d at 24, 372 N.E.2d at 952.) The trial court's finding of defendant's failure to exercise ordinary care is not against the manifest weight of the evidence.

In *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 367 N.E.2d 695, the supreme court found that the mistake of a plumbing subcontractor in failing to include in its bid the cost of the entire water supply system was a result of the subcontractor's failure to exercise ordinary care. The mistake was not discovered until four months after the bid had been accepted. The court found this to be worse than *Steinmeyer v. Schroeppel* (1907), 226 Ill. 6, 80 N.E. 564, where a clerical miscalculation in addition, discovered the day the bid was accepted, was found to be the result of the bidder's failure to exercise reasonable care. The supreme court found "no evidence tending to prove any special circumstances excusing the blunder." (226 Ill. at 13, 80 N.E. at 565.) Similarly, in this case, we find no evidence tending to prove any special circumstances excusing defendant's error in preparing the property claim agreement.

Also pertinent is *McCracken Contracting Co. v. R.L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682, where it was found that

"[t]he uncontroverted facts are that defendants agreed to a settlement in consideration for the dismissal of a lawsuit without verifying the amount due through their own records *** . Any

allegation of diligence made by defendants is unequivocally refuted by these facts. There is no question that all of the information necessary to arrive at a settlement was within defendants' knowledge and that plaintiff never attempted to conceal anything from defendants. That [*sic*] fact that the settlement was made on an allegedly incorrect basis is not now sufficient reason for disregarding a settlement made with ample opportunity to verify and obtain full knowledge of the facts." (122 Ill. App. 3d at 687, 462 N.E.2d at 687.)

The trial court's finding in the instant case that the mistake in the contract of adjustment was a result of defendant's failure to exercise ordinary care is not against the manifest weight of the evidence. In light of this finding, we need not discuss whether the evidence showed whether plaintiff could be placed *in statu quo* upon rescission of the contract.

The next argument raised by defendant on appeal is that the cumulative effect of two erroneous evidentiary rulings by the trial court deprived defendant of a fair trial. Specifically, defendant argues that the trial court erred in allowing into evidence a promissory note to the People's Bank of Marion entered into by plaintiff, and in sustaining plaintiff's objection to an attempted impeachment of the plaintiff during cross-examination by the defendant.

At trial, plaintiff testified that, when defendant refused to issue him a check in the full amount set forth in the property claim agreement, he was forced to take out a loan in the amount of $7,000 to complete the purchase of the house he had contracted to buy. When plaintiff's attorney asked plaintiff the amount of the loan, defendant's counsel objected, stating, "That is not relevant to the issues." The objection was overruled. When plaintiff offered the promissory note into evidence, defendant objected on the grounds of hearsay and relevancy. The objection was overruled, and the promissory note was admitted into evidence. Defendant now argues that the trial court erred in failing to sustain his objection on the ground of relevancy.

We disagree and find that the promissory note was relevant to the issue of consideration for the contract of adjustment, and also to show that plaintiff could not be placed *in statu quo* in the event of rescission of the contract on the basis of mistake. Evidence is relevant if it has a tendency to make a necessary fact more or less probable. (*Benson v. Bradford Mutual Fire Insurance Corp.* (1984), 121 Ill. App. 3d 500, 510, 459 N.E.2d 689, 695.) It was plaintiff's theory at trial that the undertaking of a legal obligation from which one is otherwise privileged can serve as consideration for another's promise.

Plaintiff argued that he entered into a binding contract to purchase a house in return for defendant's promise to pay him the amount set forth in the property claim agreement. The promissory note was offered into evidence to show that the contract to purchase the house was a binding legal obligation from which plaintiff could not escape. Furthermore, the promissory note was relevant to show that plaintiff could not be placed *in statu quo* in the event the contract of adjustment was rescinded because of mistake.

■■ The determination whether evidence is relevant is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. (*Benson,* 121 Ill. App. 3d at 510, 459 N.E.2d at 695.) We find no abuse of discretion in the trial court's admission into evidence of the promissory note.

Defendant also argues that the trial court erred in sustaining plaintiff's objection to defendant's attempted impeachment of plaintiff. At trial, plaintiff testified that defendant had never explained to him what his policy limit was. Defendant tried to impeach plaintiff's credibility by referring to a deposition of plaintiff in which plaintiff had stated, "I suppose Mr. Long explained [the policy limit] to me when he gave me the breakdown on it, I don't recall." Plaintiff recalled the deposition, but could not recall the specific question and answer referred to, although he did not deny his answer. Plaintiff objected to the attempted impeachment on the basis that it was not impeaching. The objection was sustained. Defendant argues the trial court erred in sustaining the objection.

■■ ■ In order to be used for impeachment, a prior statement of a witness must be materially inconsistent with his trial testimony. (*People v. Rainford* (1965), 58 Ill. App. 2d 312, 321, 208 N.E.2d 314, 319.) The test to be applied in determining if the statement is materially inconsistent is whether it has a reasonable tendency to discredit the direct testimony on a material matter. (*Rainford,* 58 Ill. App. 2d at 321, 208 N.E.2d at 319.) A witness is not to be impeached by a variance in slight particulars between his trial testimony and the prior statement where there is no material inconsistency or contradiction. (*Grabner v. American Airlines, Inc.* (1980), 81 Ill. App. 3d 894, 899, 401 N.E.2d 1196, 1201.) The inconsistency must be great enough to deny or contravene the material matter. (*Grabner,* 81 Ill. App. 3d at 899, 401 N.E.2d at 1201.) Whether to allow the admission of evidence for impeachment purposes is within the discretion of the trial court, and a reviewing court will not disturb the decision of the trial court absent an abuse of discretion. *People v. Williams* (1985), 131 Ill. App. 3d 597, 609, 475 N.E.2d 1082, 1090; *Sommese v. Maling Brothers,*

*Inc.* (1965), 65 Ill. App. 2d 223, 237, 213 N.E.2d 153, 160, *rev'd on other grounds* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.

We find no abuse of discretion in the trial court's sustaining plaintiff's objection to the attempted impeachment. Plaintiff stated in the deposition that he could not recall if Long explained his policy limit to him, but he supposed that he had. At trial, plaintiff recalled that Long had not explained the policy limit to him. The deposition was not inconsistent with plaintiff's trial testimony, as inability to remember a fact prior to trial is not inconsistent with later recall at trial. (*Grabner*, 81 Ill. App. 3d at 899, 401 N.E.2d at 1201.) The trial court did not err in either of its evidentiary rulings, and defendant was not prejudiced thereby.

Defendant's next argument on appeal is that the trial court erred in refusing to give defendant's tendered jury instructions No. 6 and No. 7, and in giving over defendant's objection plaintiff's instruction No. 21. Defendant's instruction No. 6 states:

> "A contract is an agreement between competent parties upon which a consideration sufficient in law to do or not to do a particular thing. An offer, an acceptance and consideration are basic ingredients of a contract."

Defendant's instruction No. 7 states:

> "Consideration is a basic element for the existence of a contract. Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract."

Defendant argues that these instructions should have been given because defendant's theory of defense was the lack of consideration for the contract of adjustment.

Defendant is correct that a party has the right to have the jury instructed upon his theory of defense (*Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 393, 236 N.E.2d 118, 122) and that his instructions No. 6 and No. 7 correctly state the law. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639.) However, defendant is incorrect when he argues that no other instruction pertaining to the definition of consideration was tendered by plaintiff.

Plaintiff's instruction No. 16 was given to the jury. It is substantially identical to defendant's instructions No. 6 and No. 7, and states:

> "A contract is an enforceable agreement. A contract is formed when a party makes an offer and another party accepts that offer, the contract becomes enforceable if both of the parties provide consideration.

Consideration is any act or promise which is of benefit to one party or is a disadvantage to the other. Whether a given act of a party constitutes consideration must be determined based on the circumstances which existed at the time the contract was agreed upon, not from hindsight of how parties fair [*sic*] under the contract."

Defendant is not entitled to have the jury instructed more than one time as to the definition of consideration or its indispensability to the formation of an enforceable contract. The trial court did not err in refusing to give defendant's instructions No. 6 and No. 7, and defendant suffered no prejudice thereby.

Plaintiff's instruction No. 21 states:

"If you find the parties entered into a settlement agreement of the insurance claim in good faith, the provisions of the insurance contract do not prevent the enforcement of the settlement agreement."

Defendant argues on appeal that this instruction "is an abstract statement of the law taken completely out of context of the case from which it derives," and "completely bypasses the concept of consideration." Defendant argues that this instruction allowed the jury to find for plaintiff despite the absence of any evidence of consideration to support the contract of adjustment and thereby emphasizes plaintiff's theory of the case. Defendant made similar objections before the trial court.

We find defendant's objection to this instruction to be insufficient to adequately specify the error. Objections to instructions must be made with sufficient particularity to afford the court identity of the error relied upon. (*Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 1011, 385 N.E.2d 780, 782.) Objections must specifically point out wherein the instruction is an incorrect statement of the law or not applicable. (*Culp v. Olive* (1964), 45 Ill. App. 2d 396, 406, 195 N.E.2d 729, 734.) The failure to specifically set forth the error with sufficient clarity to identify the issue constitutes a waiver of objections to the instruction. (*Mathis*, 67 Ill. App. 3d at 1012, 385 N.E.2d at 782.) Thus, it has been held that an objection that an instruction fails "to state the law" is insufficient to adequately specify the error and the objection to said instruction is waived. *Mathis*, 67 Ill. App. 3d at 1012, 385 N.E.2d at 782.

Similarly, in the instant case, defendant's objection to plaintiff's instruction No. 21 is insufficient to adequately specify the error, and defendant has waived any error with respect thereto. Furthermore, the jury was otherwise adequately instructed that it must find that

there was consideration for the contract of adjustment in order to enforce that contract.

The final issue raised by defendant is whether the trial court's finding that defendant's refusal to pay plaintiff the full amount provided in the property claim agreement constituted vexatious and unreasonable conduct within the meaning of section 155 of the Illinois Insurance Code is against the manifest weight of the evidence. Section 155 provides in pertinent part:

> "(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $25,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." (Ill. Rev. Stat. 1987, ch. 73, par. 767.)

After hearing evidence and argument on this issue, the trial court found that the failure of defendant to pay plaintiff the full amount it had agreed to pay him in the property claim agreement was both unreasonable and vexatious. Accordingly, the court ordered defendant to pay plaintiff the sum of $449 as costs, $2,514.89 as attorney fees, and penalties in the amount of $1,886.17, representing 25% of the jury verdict.

Defendant argues that the trial court's finding that defendant's conduct was unreasonable and vexatious is against the manifest weight of the evidence. Defendant argues that plaintiff's claim for an amount greater than the policy limit is a novel one, having never been addressed by an Illinois Appellate Court. In such a case, defendant argues, delay in payment of the claim is not vexatious and unreasonable. Defendant argues that its denial of plaintiff's claim was made in good faith.

██ ██ The allowance of fees and penalties under section 155 is within the judgment and discretion of the trial court, and its determi-

nation thereon will not be disturbed on review absent an abuse of discretion. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209, 456 N.E.2d 206, 216.) The question of vexatious and unreasonable delay is a factual one, which must be based upon an assessment of the totality of the circumstances, taken in broad focus. (*Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825, 832, 433 N.E.2d 378, 383.) Neither the length of time, the amount of money involved, nor any other single factor taken by itself is controlling in determining if a delay is vexatious or unreasonable. (*Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 124, 371 N.E.2d 1147, 1149.) It is the attitude of the defendant which must be examined. (*Deverman,* 56 Ill. App. 3d at 124, 371 N.E.2d at 1149.) Attorney fees and penalties are not awarded simply because the insurer refuses to settle or was unsuccessful in litigation. (*Deverman,* 56 Ill. App. 3d at 124, 371 N.E.2d at 1149.) If there is a *bona fide* dispute about coverage, delay in settling a claim may not violate the statute. *Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 999, 493 N.E.2d 638, 645.

In the case now before us we do not find a *bona fide* dispute between the parties. Although defendant argues that plaintiff's claim is a novel one which defendant reasonably defended, we do not agree. Plaintiff's suit was for breach of a contract of adjustment. This is not a novel claim. Defendant argues that because the contract of adjustment provided for payment in excess of the policy limit, it was a novel claim. Again, we do not agree. Plaintiff's suit is simply a claim for money which defendant promised it would pay him, pursuant to a settlement agreement, a promise which defendant never denied making. Defendant admitted that the mistake in the contract of adjustment was its own fault and defendant knew that plaintiff had changed his position in reliance on defendant's promise. Defendant should have known that under these circumstances any defense based on mistake was unfounded.

■■■ The trial court did not abuse its discretion in finding that defendant's conduct in refusing to pay plaintiff the amount owed under the contract of adjustment was vexatious and unreasonable under section 155 of the Illinois Insurance Code. Ill. Rev. Stat. 1987, ch. 73, par. 767.

We turn now to plaintiff's cross-appeal. After finding that defendant's conduct had been vexatious and unreasonable, the trial court ordered defendant to pay attorney fees, costs and a penalty. With regard to attorney fees, the court found that plaintiff's attorney had submitted a bill for $13,819.50, representing 180.6 hours of work

billed at an hourly rate of $75. The parties stipulated that the work had actually been performed, and the court found that the work had been necessary and that $75 per hour is a reasonable fee. However, because the court found that plaintiff had retained his attorney on a one-third contingency fee basis, it awarded attorney fees in the amount of $2,514.89, representing one-third the amount of the jury verdict.

Plaintiff filed a motion for modification of this judgment, asking that attorney fees be awarded on an hourly basis rather than on the basis of the contingent fee agreement. This motion was denied. However, on June 1, 1987, the trial court entered an amended order which states:

"2. The Court finds that not to award attorneys' fees on an hourly basis *** encourages insurance companies to unreasonably delay settlement and payment of smaller claims.

3. Lawyers cannot afford to represent insureds with smaller claims on a contingency fee basis because the fee generated will not adequately compensate the attorney for the amount of work which is necessarily expended in bringing these claims to trial.

4. The statutory purpose underlying Section 767 [*sic*] and a recognition of the disparate economic positions of the insurer and insured dictate that the law should recognize the statutory right to recover attorneys' fees pursuant to Section 767 [*sic*] be calculated on an hourly or contingency fee basis, whichever is greater.

5. However, despite the Court's findings that the work performed by Plaintiff's attorney was necessary for the preparation of trial in this cause and that the hourly rate charged was reasonable, on the evidence presented, the Court is constrained by the terms of the Employment Agreement between Plaintiff and his attorneys which provided payment on a contingency fee basis."

Plaintiff appeals from this judgment, asking that attorney fees be awarded in the amount of $13,819.50, and also that plaintiff be awarded the amount of reasonable attorney fees incurred in the appeal of this cause.

We believe the trial court had the right idea, but reached the wrong result. The purpose of section 155 of the Illinois Insurance Code is not only to aid the insured, but also to discourage insurers from profiting by their superior financial positions while delaying in the payment of contractual obligations. (*Hall v. Svea Mutual Insur-*

*ance Co.* (1986), 143 Ill. App. 3d 809, 812-13, 493 N.E.2d 1102, 1105.) These purposes would be frustrated if the recovery of attorney fees under section 155 is restricted to what has been agreed to under a contingent fee agreement. Such a restriction will hamper insureds with small claims from obtaining legal counsel to whom they may have to pay legal fees on an hourly basis even if they ultimately lose, and attorneys will hesitate to accept meritorious claims which may involve hours in excess of what the attorney could recover under a contingent fee agreement. This result would defeat the purpose of section 155 by encouraging insurers to engage in dilatory and vexatious refusals to pay small claims.

■■■ Section 155 provides for the payment of "reasonable" attorney fees. We think the term "reasonable" applies regardless of the nature of the client's contractual relationship with his attorney. For example, a contingent fee agreement providing for a fee of 80% of any amount recovered might be deemed unreasonable in some cases. We do not think the courts are constrained by the contingent fee agreement from reducing that amount to a reasonable fee under section 155. Courts should not be restricted to the contingent fee agreement in such a case. Similarly, where the amount of fees provided in the contingent fee agreement is unreasonably small, the court may award a reasonable amount under section 155 regardless of the contingent fee agreement. Such is the case now before us.

Defendant points out that in *Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 493 N.E.2d 638, an award of attorney fees based on a contingent fee agreement was upheld. However, in *Mohr*, the parties stipulated that the amount to be awarded under the contingent fee agreement was reasonable. Such is not the case before us now.

We think the trial court erred in finding that it was constrained by the terms of the contingent fee agreement in awarding attorney fees. The statute provides for the payment of "reasonable" attorney fees. The trial court's finding that $2,514.89 is a reasonable attorney fee in this case is against the manifest weight of the evidence, and we reverse that portion of the trial court's judgment. Pursuant to the power vested in us by Supreme Court Rule 366 (107 Ill. 2d R. 366), we assess attorney fees in the amount prayed for, $13,819.50, which the evidence clearly supports.

■■■ Plaintiff has also requested an award for attorney fees incurred in this appeal. The trial court found defendant's delay in paying plaintiff's claim to be vexatious and unreasonable. We find that defendant's further delay through its appeal of this cause is also vexa-

558

tious and unreasonable. We therefore remand this cause to the circuit court of Williamson County for a determination and award to plaintiff of a reasonable attorney fee incurred in defending and prosecuting this appeal. See *Hall v. Svea Mutual Insurance Co.* (1986), 143 Ill. App. 3d 809, 812, 493 N.E.2d 1102, 1105; *Songer v. State Farm Fire & Casualty Co.* (1982), 106 Ill. App. 3d 141, 147, 435 N.E.2d 948, 952.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded for further proceedings.

HARRISON and LEWIS, JJ., concur.