FRANCES M. RENKEN, Plaintiff-Appellee and Cross-Appellant, v. NORTHERN ILLINOIS WATER COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District    No. 4—89—0155

Opinion filed December 14, 1989.—Rehearing denied January 16, 1990.

STEIGMANN, J., specially concurring.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellant.

Roger B. Gomien, of Gomien, Root & Rigazio, of Morris, for appellee.

JUSTICE LUND delivered the opinion of the court:

This appeal is by defendant Northern Illinois Water Company from an order by the circuit court of Livingston County, directing defendant to pay $8,162.50 to plaintiff's attorney. The attorney fees order was pursuant to that part of section 5—201 of the Public Utilities Act (Act) (Ill. Rev. Stat. 1987, ch. 111⅔, par. 5—201) which entitles plaintiffs who recover civil damages under section 5—201 to attorney fees. Plaintiff cross-appeals from the judgment in her favor in the amount of $17,183.70, contending that the jury should not have been allowed to reduce the verdict because of comparative negligence.

On December 16, 1985, while crossing a street in Pontiac, Illinois, plaintiff stepped into a hole and fell. The hole, evidently, existed because a water valve covering was lower than the even grade of the city

street. Plaintiff was not walking in the available marked crosswalk area. Plaintiff initially filed a complaint against the City of Pontiac. Later, defendant was brought in as an additional defendant. Subsequently, plaintiff settled her claim against the City of Pontiac for $15,000. Plaintiff's attorney received $5,000 as his fee, pursuant to the contingency fee arrangement he had with plaintiff.

As for the claim against defendant, the complaint alleged a violation by defendant of section 5—201 of the Act, based on the violation of an Illinois Commerce Commission (ICC) rule. Section 5—201 provides as follows:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation.

In every case of a recovery of damages by any person or corporation under the provisions of this Section, the plaintiff shall be entitled to a reasonable attorney's fee to be fixed by the court, which fee shall be taxed and collected as part of the costs in the case.

No recovery as in this Section provided shall in any manner affect a recovery by the State of the penalties in this Act provided." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 5—201.)

The rule involved is ICC regulation 600.240, which states:

"Each utility shall establish a valve and hydrant inspection program. Valves and hydrants shall be kept in good operating condition and should be inspected at least annually. Valves and hydrants found to be inoperable shall be repaired or replaced. Valve covers shall be maintained at grade level and not paved over. Each inspection and all maintenance performed shall be properly noted on the valve or hydrant record card." 83 Ill. Adm. Code §600.240 (1985).

The matter proceeded to trial and resulted in a jury verdict for plaintiff. The jury was instructed as to comparative negligence, and

assessed plaintiff with 40% of the responsibility for the injury. The judgment of $17,183.70 represented the jury's determination of defendant's 60% share of the liability. Because of the $15,000 settlement with the City of Pontiac, defendant was only ordered to pay the additional $2,183.70 as its share of the damages to plaintiff. Subsequently, because of the favorable verdict, plaintiff asked for attorney fees under section 5—201 and submitted a statement for services in the amount of $14,212.50. The trial court allowed an award of $8,162.50 based on the amount of time actually spent preparing and trying the case against defendant. Defendant is not appealing from the award of damages, but is appealing only from the order for attorney fees. However, in attacking the attorney fees, defendant contends that section 5—201 was not applicable under the facts of this case. Defendant also contends the computation of the fee, if a fee assessment was proper, was not reasonable, and should have, at least, been limited by the contingency fee arrangement between plaintiff and her attorney.

■ If the facts in this cause cannot sustain a judgment under section 5—201, then the attorney fees ordered, based on the section, must be reversed. Section 5—201 is for practical purposes identical to what was section 73 of the Public Utilities Act (formerly Ill. Rev. Stat. 1983, ch. 111⅔, par. 77). In *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323, the question of the applicability of the defense of contributory negligence to causes under section 73 of the Act was addressed. It was recognized that a violation of a statute to protect human life or property is *prima facie* evidence of negligence. (*Barthel*, 74 Ill. 2d at 219, 384 N.E.2d at 326.) However, it must be shown that the violation proximately caused the injury, and that the statute was intended to protect a class to which the plaintiff belongs from the kind of injury suffered. (*Barthel*, 74 Ill. 2d at 220, 384 N.E.2d at 326.) Section 5—201 differs from the ordinary statute because it expressly creates a cause of action. Thus, the violation establishes negligence as a matter of law, in contrast to the *prima facie* evidence rule. (*Barthel*, 74 Ill. 2d at 220, 384 N.E.2d at 326.) The supreme court noted that in contrast to the Structural Work Act (see Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), the Coal Mining Act (see Ill. Rev. Stat. 1987, ch. 96½, pars. 251 through 3901), and the Child Labor Law (see Ill. Rev. Stat. 1987, ch. 48, pars. 31.1 through 31.22), which imposed strict liability, the Act does not entail the social policies requiring strict liability. (*Barthel*, 74 Ill. 2d at 221-22, 384 N.E.2d at 327.) Contributory negligence was upheld as a proper defense in Public Utilities Act cases by the *Barthel* decision.

Basically, contributory negligence disappeared and reappeared as

comparative negligence with the opinion of *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.

It is apparent that the evidence indicated plaintiff fell because of a hole around the water valve covering. So, proximate cause was established. The remaining question then is whether section 5—201, together with the incorporation of ICC regulation 600.240 (83 Ill. Adm. Code §600.240 (1985)), was intended to protect the class to which plaintiff belonged.

The thrust of defendant's argument is that section 5—201, coupled with regulation 600.240, was intended to regulate water valve construction and maintenance to facilitate the use of those valves, rather than protect the general public from faulty construction or maintenance. If defendant is correct, then plaintiff was not in a protected class. The following cases are submitted to support defendant's position: *Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 437 N.E.2d 930; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725; *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 399 N.E.2d 656; *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 430 N.E.2d 131. All of these cases involved incidents similar to ordinance violations. Justice Underwood explained the difference between ordinance violations and Public Utilities Act violations by stating that the former are only *prima facie* evidence of negligence, while the latter "expressly creates a cause of action." *Barthel,* 74 Ill. 2d at 220, 384 N.E.2d at 326.

*Ozment* involved an ordinance prohibiting those under 21 years of age from employment involving the sale of alcohol. The underaged employee was sexually molested while delivering alcohol to a hotel room. The appellate decision held the violation of the ordinance was not evidence of negligence under the existing facts. In *Warchol,* the duty to maintain sidewalks was not allowed as evidence of negligence when the minor was injured while walking on a pipe fence adjoining the walk. In *Galayda,* a violation of an ordinance requiring certain stair construction was not allowed as evidence of negligence when plaintiff was injured in a fire, and he did not use the faulty stairway. In *Sheehan,* plaintiff was not allowed to use evidence of defendant's violation of a parking ordinance when plaintiff swerved out of his lane to avoid another automobile and hit the defendant truck. The ordinance was held to facilitate the local residents rather than moving vehicles. Except for illustrating the "member of the class" requirement, the cited cases are not particularly helpful in deciding the issue before us.

Defendant's argument relating to the purpose of the ICC regulation insuring quality of water service, rather than protecting the pe-

destrian, presents a more challenging issue. If the regulation was for the sole purpose of assuring the usability of water valves, then, arguably, plaintiff would not be a member of the protected class.

Plaintiff argues section 8—101 of the Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 8—101), formerly section 32 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 32), requires public utilities to "promote the safety, [and] health *** of its patrons," and suggests all Administrative Code provisions are authorized by section 8—101. Defendant argues that regulation 600.240 was adopted for the purposes of implementing section 5—201 of the Act, and was only authorized by section 8—101 of the Act.

The importance of the difference between implementing and authorizing is more apparent when one recognizes the general nature of section 8—101, the first section under article VIII, entitled "Service Obligations and Conditions," and which provides:

> "Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees and public and as shall be in all respects adequate, efficient, just and reasonable.
>
> All rules and regulations made by a public utility affecting or pertaining to its charges or service to the public shall be just and reasonable.
>
> Every public utility shall, upon reasonable notice, furnish to all persons who may apply therefor and be reasonably entitled thereto, suitable facilities and service, without discrimination and without delay." Ill. Rev. Stat. 1987, ch. 111²/₃, par. 8—101.

We recognize ICC regulations have different functions. Electric utility regulations might be solely for the purpose of guaranteeing sufficient power, thus, protecting the user, while other regulations might regulate the location of the lines, intending to protect the general public. Water utilities might be controlled by regulations as to pressure available, protecting the user and aiding in fire protection. The location and condition of shutoff valves could affect both users and fire protection by minimizing areas affected by repair shutdowns. There is no question that regulation 600.240 appears, by its terminology, to be directed at the availability and condition of valves and hydrants than the safety of the general public. The only words which could conceivably be read as protection for the general public are: "Valve covers shall be maintained at grade level." Can this small part of the regulation be read so as to extend the protected class from the users of the public utility to the general public? We recognize that extending the

regulation to the protection of the general public allows for the creation of negligence as a matter of law when a violation of the regulation is proved.

The grade level regulation could well be aimed at the protection of the valve. A valve extending above grade level in a highway or road would be subject to easy damage by vehicular traffic. A valve below grade level might well be covered with surplus road materials or dirt. At the same time, valves above and below grade level could be obstacles for vehicles and pedestrians. We are aware that, regardless of whether plaintiff was in a class protected by the Act, a common law negligence action might well rest based upon the installation above or below grade level. While there is an argument for a strict construction of section 5—201, coupled with regulation 600.240, because of the creation of absolute liability, we conclude the section and regulation should be read as to apply to plaintiff under the facts of this case, and we find that she is a member of the protected class.

In light of our decision as to protected class, it is not necessary to determine whether the opinion in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 136-37, 383 N.E.2d 929, 933, is precedent for holding all violations of section 5—201, if causing personal injury, create a cause of action. The court in *Churchill* found no basis for limiting liability to issues of public utility rates and services, and specifically held:

> "We are impelled by the twin forces of statutory clarity and judicial precedent to conclude that personal injury actions, arising out of the violation of the ICC's rules on public safety at railroad crossings, are cognizable under section 73 of the Public Utilities Act." (*Churchill*, 73 Ill. 2d at 137, 383 N.E.2d at 933.)

While *Churchill* involved a violation of a regulation obviously for the protection of the general public, we recognize an argument can be made that it holds any violation of section 5—201 which results in a personal injury creates a cause of action under the Act.

Since plaintiff had a valid cause of action for damages under section 5—201, she is "entitled to a reasonable attorney's fee to be fixed by the court." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 5—201.) Defendant's second argument is that the fee fixed by the trial court was unreasonably high and should be limited to the contingent fee of one-third of the net recovery of $2,183.70.

The court allowed an award of $8,162.50 based on a computation of 65.3 hours at $125 per hour. Plaintiff's attorney had originally submitted a statement totalling $14,212.50. However, the trial court deleted the activities related solely to prosecuting the case against the

City of Pontiac. The court accepted the attorney's suggested hourly rate of $125 per hour, and awarded the attorney fee representing all of the time spent preparing and trying the case against defendant. Plaintiff's attorney had previously received $5,000 as his contingency fee from the settlement of $15,000 with the City of Pontiac. Defendant argues this award is not reasonable based on the type of case involved.

■ There are few guiding principles in our appellate decisions as to what a reasonable attorney fee should be in cases where a statute permits such an award. The Federal system has considerably more to say about the matter, particularly in the area of civil rights cases. Defendant has based its argument on two Federal civil rights cases from the Seventh Circuit Court of Appeals. In *Kirchoff v. Flynn* (7th Cir. 1986), 786 F.2d 320, the court of appeals reversed an award of attorney fees based exclusively on a 40% figure obtained from the contingency fee arrangement between attorney and client. The court stated the district court was within its discretion in accepting the contingency fee as a proper and reasonable fee. However, the district court had simply not read the fine print in the fee provision. The court remanded the cause for further consideration. *Kirchoff* was a typical tort lawsuit where the Federal foundation was mere window dressing: "The [plaintiffs] sued to redress some of the oldest torts known, not to challenge accepted wisdom or to explore uncharted seas." (*Kirchoff*, 786 F.2d at 327.) In discussing a proper award of attorney fees, the court stated the guiding principle is to determine the prevailing market rate for attorneys of comparable skill and experience who provide similar services. (*Kirchoff*, 786 F.2d at 324.) As for basing an award on a contingency arrangement, the court concluded:

> "The use of contingent fees can coexist with a recognition that courts must compensate counsel who produce non-monetary benefits, and that compensation for such benefits is presumptively based on the number of hours it took to produce the benefits. *** The use of contingent fees is appropriate in cases that enforce old precedents and allow effective compensation as a percentage of the total recovery. Neither approach governs all cases, but there is no necessary conflict. The objective in all cases is the same: to award the plaintiff's counsel the market rate for the services reasonably required to produce the victory. 'The market' uses different methods of calculating compensation in different kinds of cases.
>
> To sum up: the district judge was entitled to compute the attorneys' fee in this case as a percentage of the total award." *Kirchoff*, 786 F.2d at 328.

In the second case, *Lenard v. Argento* (7th Cir. 1987), 808 F.2d 1242, the court again discussed the effect of a contingency fee agreement:

"Although the Supreme Court has now made clear both that a contingent fee contract does not place a ceiling on the award of attorney's fees and that the award may exceed the judgment \*\*\*, the existence and terms of such a contract, and the relationship between the fees sought by counsel and the relief obtained, continue to be relevant to the district judge's decision on how large a fee to award. The statute allows only a reasonable fee. This means a fee large enough to induce competent counsel to handle the plaintiff's case, but no larger." (*Lenard*, 808 F.2d at 1247.)

Summarizing these Federal cases, the courts are not to rely arbitrarily on a contingency arrangement as the standard for determining a reasonable attorney fee. Rather, the courts are to consider the contractual fee arrangement between attorney and client as but one factor in their determination. In those instances where a contingency fee represents the standard remuneration for the type of case involved, the contingency fee may adequately serve as the final award.

■ Plaintiff cites *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 536 N.E.2d 194, to support his argument for sustaining the trial court's award of some $8,000. *Keller* follows the general guidelines outlined above. In *Keller*, the appellate court held the trial court arbitrarily relied on the contingency fee arrangement in a situation where that resulted in an unreasonably small award for the type of case involved. (*Keller*, 180 Ill. App. 3d at 557, 536 N.E.2d at 205-06.) The action against the City of Pontiac was a normal negligence trip-and-fall case. No law or fact questions are apparent which would indicate the entering into uncharted waters. The case against defendant herein is similar except for the question of absolute liability created by statute. This issue forced counsel into what appears to be uncharted waters. While we might not have awarded the fees approved by the trial court, we do not find them so excessive as to be against the manifest weight of the evidence. We affirm the trial court's fee order.

## CROSS-APPEAL

■ Plaintiff argues, on cross-appeal, that there should not be a setoff based on comparative negligence. The position is taken that the supreme court, by adopting comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886), reversed its previous ruling that

contributory negligence defenses applied to cases arising under the Act. (See *Barthel*, 74 Ill. 2d at 222, 384 N.E.2d at 329.) Plaintiff's position is without merit.

*Alvis* was filed on April 17, 1981, and modified on denial of rehearing on June 4, 1981. Justice Simon's opinion in *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918, was filed on March 31, 1981. In *Vegich*, it was pointed out that causes of actions under the Act were not limited to violations of wilful acts, thus differentiating them from violations of the Child Labor Law (Ill. Rev. Stat. 1979, ch. 48, pars. 31.1 through 31.22), the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60 through 69), and "An Act to protect workers and the general public from injury ***." (Ill. Rev. Stat. 1979, ch. 121, pars. 314.1 through 314.8.) In *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 458, 473 N.E.2d 946, 953, Justice Simon specifically held that comparative negligence was not proper in Structural Work Act cases, and cited *Vegich* and the wilfulness standard. In our opinion in *Knyal v. Illinois Power Co.* (1988), 169 Ill. App. 3d 440, 444, 523 N.E.2d 639, 642, which involved the Act, we stated:

> "Nothing we have stated is intended to make the possible status of the injured party as a trespasser immaterial on the question of whether that party's presence on the premises was foreseeable or whether that party was guilty of contributory negligence for comparative purposes."

Comparative negligence is still a proper defense in public utility cases because a violation of the Act, while creating liability, is not necessarily wilful and does not require the strict liability that exists in cases where wilfulness is part of the statute. The trial court's ruling on comparative negligence must be affirmed.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE STEIGMANN, specially concurring:
I agree with the result reached by the majority in this case, but I do not agree with the reasons given by the majority to reach that result. Specifically, I believe the majority has incorrectly construed the statute at issue in this case, section 5—201 of the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 5—201), by engaging in an analysis that has been foreclosed by a decision of the Illinois Supreme Court. The defendant in this case argues that section 5—201, coupled with regulation 600.240 of the ICC (83 Ill. Adm. Code §600.240 (1985)), was

intended to regulate water valve construction and maintenance to facilitate the use of those valves, rather than to protect the general public from faulty construction or maintenance. The majority opinion observes that if the defendant is correct, then plaintiff was not in a protected class. We know, however, that the defendant is not correct because of the decision of the Illinois Supreme Court in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929. Essentially the same argument presented to us by the defendant in this case was addressed to the supreme court in *Churchill*, and the court stated the following:

> "Defendant initially seeks to dispose of the question by asserting that the statutory remedy in section 73 does not apply to personal injury actions. It contends that the Public Utilities Act is directed at regulating rates and services of public utilities, and that, consequently, section 73 is intended to provide a remedy for such abuses as overcharging and preferential rates and not for safety violations at railroad crossings. We fail to find any substantiation whatsoever for this contention.

> *** We are impelled by the twin forces of statutory clarity and judicial precedent to conclude that personal injury actions, arising out of the violation of the ICC's rules on public safety at railroad crossings, are cognizable under section 73 of the Public Utilities Act." *Churchill*, 73 Ill. 2d at 136-37, 383 N.E.2d at 933.

As the majority opinion notes, the section 73 of the Public Utilities Act discussed in *Churchill* (Ill. Rev. Stat. 1969, ch. 111²/₃, par. 77) is for all practical purposes identical to the section 5—201 that is at issue in this case. Accordingly, in view of the *Churchill* decision, I cannot agree with the lengthy analysis of the majority opinion leading to the conclusion that section 5—201, coupled with regulation 600.240, should be read to apply to the plaintiff under the facts of this case because "she is a member of the protected class." 191 Ill. App. 3d at 750.

I further disagree with the majority's opinion because, even if the *Churchill* case had not already resolved the primary issue before us, I conclude the determination of whether the plaintiff was part of a "protected class," which the majority opinion addresses, is unnecessary based on my reading of the Illinois Supreme Court decision in *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323. The majority opinion, in analyzing *Barthel*, states the following:

> "It was recognized that a violation of a statute to protect human life or property is *prima facie* evidence of negligence. (*Barthel*, 74 Ill. 2d at 219, 384 N.E.2d at 326.) However, it must

be shown that the violation proximately caused the injury, and that the statute was intended to protect a class to which the plaintiff belongs from the kind of injury suffered. (*Barthel*, 74 Ill. 2d at 220, 384 N.E.2d at 326.) Section 5—201 differs from the ordinary statute because it expressly creates a cause of action. Thus, the violation establishes negligence as a matter of law, in contrast to the *prima facie* evidence rule." 191 Ill. App. 3d at 747, 547 N.E.2d at 1378.

In *Barthel*, as in *Churchill*, the supreme court was construing section 73 of the Public Utilities Act. In doing so, the supreme court distinguished section 73 from the ordinary statutes designed to protect human life or property by pointing out that with regard to such statutes a plaintiff, in order to recover, must show that the violation proximately caused his injury and that the statute was intended to protect a class to which he belongs from the kind of injury that he suffered. The court distinguished section 73 in the following way:

"Section 73 of the Public Utilities Act, however, differs from the ordinary statute in that it expressly creates a cause of action. The provision declares unequivocally that a utility which violates the Act or implementing regulations shall be liable in damages for resulting injuries. *** We agree with plaintiffs that the statutory provision is incompatible with the ordinary rule that violation of a statute is merely *prima facie* evidence of negligence. We do not agree, however, that the statute imposes strict liability on public utilities." *Barthel*, 74 Ill. 2d at 220, 384 N.E.2d at 326-27.

I read this language as indicating that a plaintiff must show that he belongs to a class and that he suffered from the kind of an injury that the statute at issue was intended to protect *only* when that statute is one of the ordinary statutes designed to protect human life or property; not when, as here, the statute itself expressly creates a cause of action. With regard to the ordinary statutes, their violation is only *prima facie* evidence of negligence, and the defendant may prevail by showing that he acted reasonably under the circumstances. A defendant charged with a violation of section 73 of the Public Utilities Act, now section 5—201 of that Act, may not prevail by showing that he acted reasonably under the circumstances.