FOSDICK POULTRY PROCESSORS, INC., Plaintiff and Counterdefendant-Appellee, v. HARRY EAGER, Defendant and Counterplaintiff and Third-Party Plaintiff-Appellant (F.W. Tauber, Jr., Third-Party Defendant-Appellee).

Fourth District   No. 4—89—0765

Opinion filed May 17, 1990.

Stephen C. Weeks, of Traub & Weeks, Ltd., of Fairbury, for appellant.

No brief filed for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:
Defendant, Harry Eager, and third-party defendant, F.W. Tauber,

Jr., an agent of Fosdick Poultry Processors, entered into a distributor's agreement which named Eager as the exclusive sales representative of Fosdick Poultry for a specified territory. In return, Eager paid Tauber $7,500. From August 16, 1986, through November 5, 1986, Eager sold products processed by Fosdick pursuant to the terms of the agreement.

On December 5, 1986, Fosdick sued Eager based on Eager's failure to honor the distributor's agreement. Eager counterclaimed, alleging that Fosdick breached the distributor's agreement by assigning some of his exclusive sales territory to another person. In addition, Eager claimed that Fosdick violated the Franchise Disclosure Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*) by failing to file a disclosure statement or to register the distributor's agreement. Eager later filed a third-party complaint against Tauber based on his violation of the Act.

On December 22, 1986, Eager served a notice to rescind the distributor's agreement based on section 21 of the Act (Ill. Rev. Stat. 1985, ch. 121½, pars. 721(2)(a), (2)(b)). (The Act was repealed in 1988, but governs the resolution of this case because all of the relevant events occurred prior to 1988.) Although Eager tendered his inventory of unsold Fosdick products, Fosdick refused to refund the $7,500 set-up fee.

After a bench trial, the circuit court determined that Eager did not acquire a franchise from Fosdick and that the distributor's agreement was not governed by the Act. In accordance with that finding, neither Fosdick nor Tauber was required to comply with the Act's disclosure or registration provisions. Eager appeals that determination.

■ Neither Fosdick nor Tauber, as appellees, filed briefs in this appeal. Nevertheless, this court will decide the merits of this case because the record is simple and the claimed errors are such that the court can easily decide them without the aid of the appellees' briefs. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

The definition of franchise set forth in section 3 of the Act reads as follows:

"(1) 'Franchise' means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $100 or more; ***." Ill. Rev. Stat. 1985, ch. 121½, pars. 703(1)(a), (1)(b), (1)(c).

The focus of the circuit court's consideration was whether the requirements of section 3(1)(b) of the Act had been met, *e.g.*, whether the operation of Eager's business was "substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor."

Eager argues that a label required by the United States Department of Agriculture (USDA), indicating (1) the net weight of the product, (2) that the poultry was distributed by Fosdick, and (3) that it was inspected by the USDA, constitutes a trade name substantially associated with his business. In addition, Eager contends that the association of the Fosdick trade name with Eager's business is further shown by Eager's use of the Fosdick letterhead for various communications to customers and salesmen.

In response, Tauber claimed that the label served merely to show the origin of the processed poultry as required by the USDA. (The label in question is included as an appendix to this opinion.) Tauber argued that the label, when attached to the product, is relatively inconspicuous. Furthermore, according to Tauber, the rules of both the USDA and the Federal Food and Drug Administration proscribing the use of the label in advertising show that the statute does not cover this situation.

The circuit court determined that Eager failed to prove that the operation of the business was "substantially associated" with the franchisor's trade name as required by section 3(1)(b) of the Act (Ill. Rev. Stat. 1985, ch. 121½, par. 703(1)(b)). The circuit court explained as follows:

"To hold otherwise would mean that as a matter of law a trademark or trade name has been established whenever a product is sold which carries upon it the identity of the manufacturer and place of origin as required by governmental standards. Also, to hold otherwise, would mean that as a matter of law, the operation of a particular business is always substantially associated with a label when a label is printed upon the

product simply to identify it and show government inspection and approval. Neither the statute [nor] case law suggested by counsel tends to indicate that the statute in question was intended to cover such a situation."

Few cases have considered under what circumstances a franchise is formed. Recently, however, the Second District Appellate Court considered whether a trademark was substantially associated with the operation of a business. (*Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663, 548 N.E.2d 1151.) The agreement in *Salkeld* stated the following:

> "[T]he '[c]ompany is the authorized Licensee granted certain rights to the use of trademarks, including COCKTAILS NATURALLY which have been registered with the patent Office of the United States.' " (*Salkeld*, 192 Ill. App. 3d at 671, 548 N.E.2d at 1156.)

The agreement further provided that the " '[s]ub-licensee [plaintiff] regognizes [*sic*] the benefits to be derived from being identified with and sub-licensed by Company [Innovative Concepts and The Buffer Zone], and being able to utilize the systems, *patents, name and marks* which Company makes available to its Sub-Licensee.' (Emphasis added.)" (*Salkeld*, 192 Ill. App. 3d at 671, 548 N.E.2d at 1156.) The appellate court held that these representations were substantially associated with plaintiff's business such that the requirements of section 3(1)(b) of the Act were satisfied. *Salkeld*, 192 Ill. App. 3d at 671, 548 N.E.2d at 1156.

The agreement in the present case permits Eager to use "all [of the] company logos, advertising and *** printed material necessary to operate" the business. Any benefits to be derived from the use of the logos were not specifically mentioned in the contract, a factor that is significant in distinguishing this case from *Salkeld*.

*Salkeld* is further distinguishable based on the nature of the products to be distributed; *e.g.*, cocktail mixer versus poultry. A cocktail mixer seems more strongly associated with its trademark than a turkey with its processor's logo. Also, as noted by the trial court, the presence of Fosdick's logo was *required* by Federal regulations, a consideration not necessarily applicable to cocktail mixer.

■ We find the reasoning in the trial court's written findings to be well stated, and we adopt it. An inconspicuous mark required by the government to designate the origin of a poultry product is not a commercial symbol "substantially associated" with the business within the meaning of section 3(1)(b) of the Act.

Eager also argues that a certificate of noncompliance issued to

Fosdick by the Attorney General is *prima facie* proof that Fosdick was not a franchisor as defined by the Act. Eager cites section 24 of the Act, which states as follows:

> "In any civil or criminal action brought under this Act, a certificate under the seal of State, signed by the Administrator, stating non-compliance with the provisions of this Act, shall constitute prima facie evidence of such non-compliance with the provisions of this Act and shall be admissible in any such action." Ill. Rev. Stat. 1985, ch. 121½, par. 724.

■ However, section 24 addresses a franchisor's or franchisee's noncompliance with the Act and not whether an entity holds the status of franchisor or franchisee. Furthermore, section 24 only addresses evidentiary issues. A bench trial was held in this case, and the decision reached is fully supported by *all* the evidence presented, including the certificate of noncompliance.

Judgment affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.

APPENDIX