CLYDE E. BLANKENSHIP, Plaintiff-Appellee, v. DIALIST INTERNA-
TIONAL CORPORATION *et al.*, Defendants-Appellants.

Fifth District   No. 5—90—0022

Opinion filed March 7, 1991.

Andrew J. Gleeson, of Kassly, Bone, Becker, Dix, Reagan & Young, of Belleville, for appellants.

Kurowski & Courtney, P.C., of Belleville (Edward E. Johnston and John J. Kurowski, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendants Dialist International Corporation, Herman L. Smith and James Cronin appeal from orders of the circuit court of St. Clair County entering summary judgment and awarding attorney fees in favor of plaintiff Clyde E. Blankenship in an action brought under the Franchise Disclosure Act (the Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*). Defendants contend that the trial court erred: (1) in granting summary judgment on the issue of damages where a genuine issue of material fact existed as to whether plaintiff acquired a franchise from defendants within the meaning of the Act; and (2) in awarding attorney fees in the amount of plaintiff's contingency fee contract rather than based on an hourly rate.

Plaintiff and defendant Cronin, vice-president and national sales manager of Dialist International Corporation, entered into a distributor's agreement which named plaintiff as the sales representative of

Dialist International for a specified territory. In return, plaintiff paid Dialist International $15,000. Thereafter, plaintiff met with defendant Cronin and received a detailed explanation of the Dialist system and instruction on how to market the product, a list-finder device designed for attachment to telephones. Defendant Cronin also provided plaintiff with a blue binder entitled "Every Telephone Needs Dialist," which contained promotional materials, letters from purported customers and samples of Dialist advertising, cost sheets and purchase orders. Plaintiff was informed that additional instruction sessions would be held at a later date, but was never contacted further. Upon attempting to market the Dialist, plaintiff encountered difficulty regarding the credibility of the company. Defendant Smith, president of Dialist International, was contacted and provided plaintiff with a letter vouching for the credibility of Dialist International.

In March 1987, plaintiff sued defendants for rescission of the distributorship agreement and for damages under section 21 of the Act, asserting in substance that the agreement was for the sale of a franchise and because such sale was made in violation of section 4 of the Act, he was entitled to the return, with interest, of the full amount paid by him for the franchise plus attorney fees and costs. (See Ill. Rev. Stat. 1985, ch. 121½, pars. 704, 721(1), (2)(a).) Thereafter, plaintiff moved for summary judgment as to all issues. Defendants' motion to dismiss, alleging exemption from the Act, was denied. On April 13, 1989, the trial court granted summary judgment for plaintiff and against defendants for the $15,000 plus interest at the rate of 9%.

On May 3, 1989, plaintiff filed his petition for attorney fees which requested "the sum pursuant to the contract for services signed in this matter which is a contingency fee of one-third of the amount recovered *** or in the alternative the actual amount of services rendered at the reasonable hourly rate of counsel in this matter." On December 13, 1989, the trial court entered its order awarding plaintiff attorney fees of $5,000 pursuant to the contingency fee contract.

We turn first to defendants' contention that by virtue of the application of the Act, a genuine factual question was created which precluded the entry of summary judgment. We disagree.

■■ ■ The sole function of the court reviewing the trial court's entry of summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law. (*People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 104,

510 N.E.2d 577, 589; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133, 1136.) In ruling on a summary judgment motion, the trial court is required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496.) If any facts upon which reasonable persons may disagree are identified, or inferences may be fairly drawn from those facts leading to different conclusions, the motion must be denied and the resolution of those facts and inferences be made at trial. *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697, 699.

■ However, where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. (*Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 385, 425 N.E.2d 1055, 1058.) If the opponent fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper. *Kocjancich v. Bridges* (1981), 93 Ill. App. 3d 550, 552, 417 N.E.2d 694, 696-97.

■ Defendants argue that the affidavit and supporting documents submitted by plaintiff failed to establish that a franchise agreement existed between the parties. The definition of "franchise" set forth in section 3 of the Act reads as follows:

"(1) 'Franchise' means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $100 or more." (Ill. Rev. Stat. 1985, ch. 121½, pars. 703(1)(a), (1)(b), (1)(c).)

Thus, by statutory definition, a franchise exists where an agreement meets the three objective criteria. *Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663, 670, 548 N.E.2d 1151, 1155.

■■ ■ Under the first statutory criterion, plaintiff must demonstrate that defendants granted him the right to sell or distribute goods pursuant to a suggested marketing plan or system. Defendants argue that the material provided to plaintiff cannot be considered a marketing plan where, under the agreement, plaintiff was allowed to "develop his territory and sales staff without interference." However, the focus of this requirement is not the franchisee's mandatory use of the marketing plan, as the language "prescribed or suggested" reveals, but rather whether such a right was provided under the contract. Ill. Rev. Stat. 1985, ch. 121½, par. 703(1)(a).

Section 3 of the Act defines a marketing plan as:

> "[A] plan relating to some aspect of the conduct of a party to a contract in conducting business, including but not limited to (a) specification of price, or special pricing systems or discount plans, (b) use of particular sales or display equipment or merchandising devices, (c) use of specific sales techniques, (d) use of advertising or promotional materials or cooperation in advertising efforts ***." (Ill. Rev. Stat. 1985, ch. 121½, par. 703(19).)

A review of the record indicates that the agreement at issue in the present case satisfies the statutory requirement of a marketing plan or system.

According to plaintiff's uncontradicted affidavit, he met with a representative of Dialist International, defendant Cronin, and received a detailed explanation of the Dialist system and instruction on how to market the product. Plaintiff was promised that additional instruction regarding the system would be held at a later date. He was further provided a manual or binder detailing product information and sales points and providing promotional material, sample advertisements and numerous letters from purported customers announcing their participation in the public relations program known as Dialist. As part of his sales strategy, plaintiff was advised to obtain similar letters for use in approaching new customers. When plaintiff encountered difficulty regarding the credibility of Dialist International, its president, defendant Smith, assisted plaintiff by furnishing a letter asserting the company's "intergrity [*sic*] and financial responsibility." We believe that these representations amply satisfy the statutory requirement of the existence of a marketing plan or system. See *Salkeld*, 192 Ill. App. 3d at 670-71, 548 N.E.2d at 1155-56.

The second statutory criterion concerns the use of a trade name or other commercial symbol designating the franchise or its affiliate. Defendants argue that plaintiff's conclusory assertion that the designation "Dialist" is a trade name does not satisfy the requirement of section 3(1)(b), where plaintiff offers no proof that the name is substantially associated with the operation of his business. (Ill. Rev. Stat. 1985, ch. 121½, par. 703(1)(b).) However, the agreement at issue, as well as uncontradicted facts in plaintiff's affidavit, indicate that plaintiff's use of the trade name Dialist was contemplated.

■■ The "Dialist Agreement" granted to plaintiff "the distributorship and authority to sell Cooperative Dialists." All the promotional materials provided to plaintiff refer to the product as Dialist. Furthermore, plaintiff was instructed to rely on the purported good name of Dialist and the company of the same name in marketing the product. Given the strong association between the Dialist name and the nature of the product to be distributed and the promised benefits to be derived from being identified with Dialist International, we find that plaintiff's business was substantially associated with the trade name Dialist such that the second statutory requirement was satisfied. See *Salkeld*, 192 Ill. App. 3d at 671, 548 N.E.2d at 1156; *Cf. Fosdick Poultry Processors, Inc. v. Eager* (1990), 197 Ill. App. 3d 727, 730, 555 N.E.2d 62, 64-65.

■■ The final statutory requirement is that plaintiff must have paid a fee of $100 or more to be granted the right to engage in the business. Plaintiff asserts, and defendants do not dispute, that he paid $15,000 for the right to engage in his business. Thus, inasmuch as plaintiff has asserted facts sufficient to satisfy each criterion in the statutory definition, we conclude that no genuine issue of material fact existed as to the applicability of the Act. Therefore, the trial court did not err in entering summary judgment for plaintiff.

■■ Because plaintiff had a valid cause of action for damages under section 21, he is "entitled to the costs of the action including, without limitation, reasonable attorney's fees." (Ill. Rev. Stat. 1985, ch. 121½, par. 721(1).) Defendants' second argument is that the contingency fee of one-third of the recovery of $15,000 awarded by the trial court was unreasonably high and should be limited to the $3,100 in hourly fees proven by plaintiff's attorneys.

■■ There are few guiding principles in our appellate decisions as to what reasonable attorney fees should be in cases where a statute permits such an award. However, in *Renken v. Northern Illinois Water Co.* (1989), 191 Ill. App. 3d 744, 547 N.E.2d 1376, the court examined Federal case law in this area and stated that the objective is " 'to

award the plaintiff's counsel the market rate for the services reasonably required to produce the victory.' " *Renken*, 191 Ill. App. 3d at 751, 547 N.E.2d at 1380, quoting *Kirchoff v. Flynn* (7th Cir. 1986), 786 F.2d 320, 328.

■■ This court has held that, for purposes of determining statutory attorney fees, the term "reasonable" applies regardless of the nature of the client's contractual relationship with his attorney. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 557, 536 N.E.2d 194, 205.) Rather, the courts are to consider the contractual fee arrangement between attorney and client as but one factor in their determination. (*Renken*, 191 Ill. App. 3d at 752, 547 N.E.2d at 1381.) Other factors to be considered in determining reasonable attorney fees are the skill and standing of the attorney employed, the nature of the cause and the novelty and difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. (*Carefree Foliage, Inc. v. American Tours, Inc.* (1987), 153 Ill. App. 3d 190, 197-98, 505 N.E.2d 1039, 1044-45; *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 984, 518 N.E.2d 424, 428.) The trial court's decision will not be reversed absent an abuse of discretion. *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 428.

■■ In the instant case, defendants claim that the trial court failed to consider any of the above-mentioned factors. However, the order awarding attorney fees noted the high level of expertise and the amount of work performed by plaintiff's attorneys as well as the salutary purpose of the Act. Additionally, the court found that the contingency fee contract of 33⅓% which existed between plaintiff and his attorneys was "[t]he normal contingency fee contract in this community." This court has upheld a trial court's ruling that a fee equal to 33⅓% of plaintiff's recovery was appropriate as the reasonable value of services rendered for trial work. (*Baker v. City of Granite City* (1983), 112 Ill. App. 3d 1096, 446 N.E.2d 531.) Therefore, we do not feel that the trial court abused its discretion in awarding the contingency fee amount of $5,000 as reasonable attorney fees.

For the foregoing reasons, the orders of the circuit court of St. Clair County are affirmed.

Affirmed.

RARICK, P.J., and WELCH, J., concur.