STELLA SHEFTS, Special Adm'x of the Estate of Stanley Shefts, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—91—0020

Opinion filed September 30, 1992.—Rehearing denied December 2, 1992.

Albert F. Hofeld and Howard Schaffner, both of Hofeld & Schaffner, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Stella Shefts, appeals from the circuit court's granting of summary judgment in favor of the defendant, the City of Chicago (City). In her complaint for wrongful death, Shefts alleges that on May 14, 1990, her husband became short of breath while at home and also began to perspire. Recognizing that her husband was having a heart attack, Shefts telephoned 911 to secure emergency medical help. Shefts spoke with the 911 operator/dispatcher. The complaint further alleges that Shefts told the operator that her husband was having a heart attack and that an ambulance should be sent immediately to transport her husband to St. Margaret's Hospital in Hammond, Indiana, which was the closest hospital and also where her husband's doctor was on staff. The operator told Shefts that her husband would not be taken to St. Margaret's Hospital, 3½ miles from her home, but would be transported to South Chicago Hospital, seven miles from her home. At that point, Shefts decided to contact a private ambulance service to take her husband to St. Margaret's Hospi-

tal. Shefts alleges that as a result of the City's failure to send an ambulance, her husband was deprived of medical attention for at least 30 minutes. Shefts' husband was pronounced dead on arrival to St. Margaret's Hospital.

Count I of Shefts' complaint charged the City with willful and wanton misconduct; count II charged gross negligence. Both counts claimed that the City's misconduct in failing to send an ambulance was the direct and proximate cause of her husband's death. The City filed a motion for summary judgment and attached a copy of the transcript of Shefts' phone conversation with the 911 operator as well as affidavits attesting to the accuracy of the transcript. Shefts filed a memorandum in answer to the motion which was not accompanied by affidavits or any other evidence. The court granted the City's motion, and Shefts filed a motion to vacate, attaching Shefts' and her attorney's affidavits. The attorney's affidavit stated that he believed that the City's custom and practice required that Shefts' husband be taken to the Hammond hospital. The motion was denied and Shefts appeals.

Our sole function in reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered as a matter of law. (*Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 568 N.E.2d 503.) Summary judgment is appropriate only when the pleadings, depositions, affidavits, and admissions on file present no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Moreover, it is well established that the pleadings, depositions, admissions, and affidavits in support of the summary judgment motion are to be construed most strictly against the moving party and liberally in favor of the opponent. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304.

The City's motion for summary judgment alleged that the City had no duty under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 5—101) to provide emergency medical services to Shefts' husband, and further, under the Emergency Telephone System Act (Ill. Rev. Stat. 1987, ch. 134, par. 45.1), the City could not be held liable for any act or omission, except for willful and wanton misconduct and that the City's conduct did not meet that standard.

We note that the City's motion for summary judgment encompassed the allegation that the City was immune from liability under the Tort Immunity Act. We believe this allegation should have been

filed in a separate motion to dismiss. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) The failure to do so confused both the parties and the court and unduly extended the trial court hearings on the summary judgment motion.

On the issue of immunity, the City contends that under section 5—101 of the Tort Immunity Act, the City has no duty to establish an emergency service and, therefore, the City is immune from tort liability.

This issue was addressed in *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E.2d 77, where the court held that the City's 911 system is an emergency service under the Emergency Telephone System Act and not a police protection service. Therefore, the Tort Immunity Act did not apply and the applicable standard of liability was that of willful and wanton misconduct.

■ Similarly, in the instant case, we believe that in spite of the fact that Shefts was connected to the fire department when she placed her call to 911, this fact was insufficient to contradict the standard of liability that is expressly imposed on public agencies and their employees who operate and implement the 911 service. We thus apply the standard of willful and wanton misconduct to the City in assessing the court's entry of summary judgment.

We now address the issue of fact which was appropriately brought in the City's summary judgment motion. We agree with Shefts' definition of what constitutes willful and wanton misconduct. The acts must reflect a reckless disregard or an utter indifference for the safety of others. (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 69 N.E.2d 293.) Willful and wanton misconduct " ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' " *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 416, 563 N.E.2d 397, quoting *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457, 501 N.E.2d 830, quoting Restatement (Second) of Torts §886A, Comment *k* (1979).

Shefts contends that the affidavits and the undenied allegations in the complaint presented a question of fact as to whether the operator was guilty of willful and wanton misconduct. Shefts further argues that the operator's admitted refusal to follow standard procedure to aid a known heart attack victim should qualify as willful and wanton.

Attached to the City's summary judgment motion was the transcript of the conversation which Shefts had with the 911 service and reads as follows:

"Ms. Bonner: Fire Department, Bonner.

Mrs. Shefts: I would like to have an ambulance take my husband to St. Margaret's Hospital in Hammond.

Ms. Bonner: We won't take him to a hospital in Hammond. First of all, what's wrong with him?

Mrs. Shefts: Well, he's sweating profusely and he can't catch his breath.

Ms. Bonner: What is your address?

Mrs. Shefts: 13318 Buffalo Avenue.

Ms. Bonner: Alright now.

Mrs. Shefts: I, I,—Daley's Ambulance Service is not too far from here but I can't find their number. D-A-L-E-Y in Cal City.

Ms. Bonner: Alright now, we'll send the ambulance over there Ma'am.

Mrs. Shefts: Well, he has to go to Hammond Hospital. If you can't send an ambulance that will take him to St. Margaret's Hospital, I don't need you. You know what I mean. I have to go to Hammond Hospital—that's where his doctor is.

Ms. Bonner: Alright, well, I can give you the private ambulance number. Did you check your telephone book under ambulances to find Daley's number? Did you call?

Mrs. Shefts: No, I didn't. I thought if I called I could get help. What is that number please?

Ms. Bonner: 637-5400.

Mrs. Shefts: Is that the Daley number?

Ms. Bonner: That's the Metropolitan Ambulance Service. They provide service throughout the City of Chicago.

Mrs. Shefts: Well we are on the very far south side.

Ms. Bonner: Right.

Mrs. Shefts: How far are they? Where are they?

Ms. Bonner: I don't know their location, Ma'am.

Mrs. Shefts: Well, I'll have to look in the ambulance myself. I'm sorry—because I can't wait for an ambulance from downtown.

Ms. Bonner: O.K."

The transcript illustrates that the operator was prepared to send the ambulance to Shefts' home. Shefts flatly rejected the ambulance unless the ambulance would take her husband to the hospital of her choice. At that point, the dispatcher gave Shefts the telephone number of a private ambulance service that provided service throughout the City.

■ Referring to the definition of willful and wanton misconduct, with its elements of recklessness and carelessness, we do not believe the dispatcher's conduct rises to the level required to overcome the City's summary judgment motion. Even when we consider Shefts' affidavit and her attorney's affidavit which were submitted in their motion to vacate, we do not find a material issue of fact. Shefts' affidavit states that she told the operator, even though the transcript does not reflect her statement, that her husband was having a heart attack. She further states that she knew that the difference in time between taking her husband to the next nearest hospital and the hospital in Hammond was over 20 minutes. Shefts states that she knew that it was routine for 911 ambulances to take patients from her area to the Hammond hospital because it was the closest hospital. She told the operator that she did not need the ambulance because she knew that her husband would die if he was not taken to the nearest hospital. The attorney's affidavit attested to Shefts' belief that her husband would die if he were not taken to the Hammond hospital.

We do not believe that what Shefts believed was required to save her husband's life and what she believed was routine protocol for 911 ambulances is germane to whether the dispatcher's conduct can be considered willful and wanton. Simply, the dispatcher was prepared to send an ambulance and Shefts refused the ambulance. Construing the evidence most strictly against the City, no genuine issue of material fact has been raised as to whether the dispatcher's conduct rose to the level of willful and wanton. We accordingly affirm the court's entry of summary judgment.

■ We further find that Shefts' final argument that the court should have allowed further discovery in order to show that the operator's conduct was willful and wanton to be without merit. The discovery requests concerned what the attorney believed the standard procedures were for the City's emergency services. As we have already discussed, in light of the transcript of Shefts' conversation with the dispatcher, discovery was unnecessary. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.